## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAMES WALLEN, ROYCE LADER, RITA FAHRNER, LEEANN BIDDIX, FRANK HIGHSMITH, JERRY HILL, HELEN KASSAMANIAN, and ERNEST BRANIGH, individually and on behalf of all others similarly situated, | Case No. 7:21-cv-08624-VB **FIRST AMENDED CLASS ACTION COMPLAINT** **JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| CONSUMER REPORTS, INC. | |
| Defendant. | |

On behalf of themselves and all others similarly situated, Plaintiffs James Wallen, Royce Lader, Rita Fahrner, LeeAnn Biddix, Frank Highsmith, Jerry Hill, Helen Kassamanian, and Ernest Branigh (collectively, "Plaintiffs") allege the following based upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters based upon the investigation conducted by and through their attorneys. Plaintiffs believe that substantial evidentiary support exists for the allegations set forth herein.

### NATURE OF ACTION

1.     Defendant Consumer Reports, Inc. ("Consumer Reports" or "Defendant") publishes *Consumer Reports* magazines.

2.     Defendant derives revenue in at least two ways:  First, it sells subscriptions to its magazines to consumers; and second, it sells the identities of its magazine subscription consumers ("Data Brokerage Products") to various third parties, including data miners, data aggregators, data appenders, data cooperatives, list rental recipients, list exchange recipients, and/or list brokers, among others ("Data Brokerage Clients").

3.     The Data Brokerage Products that Consumer Reports sells, licenses, rents,

exchanges, and otherwise discloses to its Data Brokerage Clients contain its customers' specific identities, including their full names, titles of magazine publications subscribed to, home addresses, and myriad other categories of individualized data such as each customer's gender, ethnicity, and religion.

4.    By licensing, renting, exchanging, or otherwise disclosing—rather than only selling—its magazine subscribers' identities, Consumer Reports is able to misappropriate (and profit from) their identities time and time again to countless third parties.

5.    Consumer Report's disclosure of names and identities and other individualized information is not only unlawful but is also dangerous, because it provides malevolent actors with the tools needed to target particular members of society.

6.    By selling products to its Data Brokerage Clients comprised entirely of its magazine subscribers' identities—without their consent—Defendant has violated, and continues to violate, statutes governing the misappropriation of individuals' names, identities, and/or likenesses in the states of Alabama, California, Hawaii, Indiana, Nevada, Ohio, and Washington.

## PERTINENT STATUTORY SCHEMES

### I. Alabama

7.    The Alabama Right of Publicity Act states that: "any person or entity who uses or causes the use of the indica of identity of a person, on or in products, goods, merchandise, or services entered into commerce in this state, or for purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise or services … without consent shall be liable under this article to that person, or to a holder of that person's rights."  Ala. Code § 6-5-772(a) (the "Alabama Statute").

8.    Indica of identity "include[s] those attributes of a person that serve to identify that person to an ordinary, reasonable viewer or listener, including, but not limited to, name, signature, photograph, image, likeness, voice, or a substantially similar imitation of one or more of those attributes."  Ala. Code § 6-5-771(1).

## II.    California

9.      California's misappropriation of name or likeness statute, Cal. Civ. Code § 3344 (the "California Statute"), states that: "Any person who knowingly uses another's name … or likeness, in any manner, on or in products, merchandise, or goods … without such person's prior consent, or, in the case of a minor, the prior consent of his parent or legal guardian, shall be liable … to the injured party or parties in an amount equal to the greater of seven hundred fifty dollars ($750) or the actual damages suffered by him or her as a result of the unauthorized use[.]" Cal. Civ. Code § 3344 (the "California Statute").

10.     Notably, California Civil Code Section 3344 was amended in 1984 to include the phrase (appearing in the statutory text quoted above) "on or in products, merchandise, or goods" as an additional way in which an unauthorized use of a person's name or likeness violates the statute. *See* Stats. of 1984, Ch. 1704, §2 at 6172.  In making this amendment, the California legislature sought to prohibit the use of a person's name on or in a product, good, or piece of merchandise, rather than simply in an advertisement for another product or service. *Comedy III Prods., Inc. v. Gary Saderup, Inc.*, 21 P.3d 797, 801-02 (Cal. 2001).

## III.    Hawaii

11.     Hawaii's misappropriation of name or likeness statute, Haw. Rev. Stat. Ann. § 482P-1, et seq. (the "Hawaii Statute"), states that: "any person who uses or authorizes the use of a living … individual's or personality's name, … or likeness, on or in goods, merchandise, or services entered into commerce in this State … without express or implied consent of the owner of the right, has infringed a publicity right under this chapter." Haw. Rev. Stat. Ann. § 482P-5.

## IV.    Indiana

12.     Indiana's misappropriation statute, IC 32-36-1-1, *et seq.* (the "Indiana Statute"), states that: "A person may not use an aspect of a personality's right of publicity for a commercial purpose … without having obtained previous written consent."  IC 32-36-1-8(a).

13.     Under the Indiana Statute, "commercial purpose" is defined as, *inter alia*, "the use of an aspect of a personality's right of publicity … [o]n or in connection with a product, merchandise, goods, services, or commercial activities."  IC 32-36-1-2.

**V.     Nevada**

14.     Nevada's misappropriation statute, Nev. Rev. Stat. Ann. § 597.770, *et seq.* (the "Nevada Statute"), states that: "There is a right of publicity in the name, voice, signature, photograph or likeness of every person. The right endures for a term consisting of the life of the person and 50 years after his or her death, regardless of whether the person commercially exploits the right during his or her lifetime."  Nev. Rev. Stat. Ann. § 597.790.

15.     Under the Nevada Statute: "Any commercial use by another of the name …  of a person requires the written consent of that person or his or her successor in interest[.]"  Nev. Rev. Stat. Ann. § 597.790.

16.     "Commercial use" includes "the use of the name, voice, signature, photograph or likeness of a person on or in any product, merchandise or goods or for the purposes of advertising, selling or soliciting the purchase of any product, merchandise, goods or service." Nev. Rev. Stat. Ann. § 597.770.

**VI.     Ohio**

17.     Ohio's misappropriation statute, Ohio Rev. Code § 2741.01, *et seq.* (the "Ohio Statute"), states that: "a person shall not use any aspect of an individual's persona for a commercial purpose"  unless "the person first obtains the written consent to use the individual's persona[.]" Ohio Rev. Code §2741.02(A)-(B).

18.     The term "persona" is defined as "an individual's name, voice, signature, photograph, image, likeness, or distinctive appearance, if any of these aspects have commercial value."  *Id.* §2741.01(A).

19.     "'Name' means the actual, assumed, or clearly identifiable name of or reference to a living or deceased individual that identifies the individual." *Id.*

20.     "'Commercial purpose' means the use of or reference to an aspect of an individual's persona … [o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities not expressly exempted under this chapter."  *Id.*

**VII.    Washington**

21.     Washington's misappropriation statue, RCW 63.60.010, *et seq.* (the "Washington Statute"), establishes that in the state of Washington: "Every individual or personality has a property right in the use of his or her name, voice, signature, photograph, or likeness."  RCW 63.60.010.

22.     Further, "Any person who uses or authorizes the use of a living or deceased individual's … name … on or in goods, merchandise, or products entered into commerce in this state … without written or oral, express or implied consent of the owner of the right, has infringed such right." RCW 63.60.050.

23.     Under the Washington Statute, "individual" means "a natural person, living or dead."  RCW 63.60.020.

24.     "Person" is defined as "any natural person, firm, association, partnership, corporation, joint stock company, syndicate, receiver, common law trust, conservator, statutory trust, or any other concern by whatever name known or however organized, formed, or created, and includes not-for-profit corporations, associations, educational and religious institutions, political parties, and community, civic, or other organizations." *Id.*

25.     "Name" means the actual or assumed name, or nickname, of a living or deceased individual that is intended to identify that individual.  *Id.*

## PARTIES

26.     Plaintiff Royce Lader is a citizen of Alabama who resides in Fort Payne, Alabama.  Plaintiff Lader has been a subscriber of *Consumer Reports* magazine for over ten years.

27.     Plaintiff Rita Fahrner is a citizen of California who resides in San Francisco, California.  Plaintiff Fahrner has been a subscriber of *Consumer Reports* magazine for over twenty years.

28.     Plaintiff LeeAnn Biddix is a citizen of Hawaii who resides in Keaau, Hawaii. Plaintiff Biddix has been a subscriber of *Consumer Reports* magazine for over one year.

29.     Plaintiff Frank Highsmith is a citizen of Hawaii who resides in Honolulu, Hawaii. Plaintiff Highsmith has been a subscriber of *Consumer Reports* magazine for over fifteen years.

30.     Plaintiff Jerry Hill is a citizen of Indiana who resides in Terre Haute, Indiana. Plaintiff Hill has been a subscriber of *Consumer Reports* magazine for approximately two to three years.

31.     Plaintiff Helen Kassamanian is a citizen of Nevada who resides in Las Vegas, Nevada.  Plaintiff Kassamanian has been a subscriber of *Consumer Reports* magazine for approximately six months.

32.     Plaintiff James Wallen is a citizen of Ohio who resides in Orrville, Ohio.  Plaintiff Wallen has been a subscriber of *Consumer Reports* magazine for approximately five years.

33.     Plaintiff Ernest Branigh is a citizen of Washington who resides in Oak Harbor, Washington.  Plaintiff Branigh has been a subscriber of *Consumer Reports* magazine for approximately seven years.

34.     Defendant Consumer Reports, Inc. is a New York not-for-profit corporation with its principal place of business at 101 Truman Avenue, Yonkers, NY 10703.  Consumer Reports does business throughout Alabama, California, Hawaii, Indiana, Nevada, Ohio, Washington, and the rest of the United States.

## JURISDICTION AND VENUE

35.     The Court has subject-matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(d)(2)(A) because there are more than 100 members of each of the proposed Classes (defined below), the aggregate amount in controversy with respect to the claim alleged on behalf of each of the proposed Classes exceeds $5,000,000, exclusive of interest, fees, and

costs, and at least one member of each of the Classes (including each of the Plaintiffs) is a citizen of a state different from Defendant.

36.     The Court has personal jurisdiction over Defendant because Defendant maintains its corporate headquarters and principal place of business in this district.

37.     Venue is proper in this judicial District pursuant to 28 U.S.C. §1391 because Defendant resides in and is subject to personal jurisdiction in this District.

## FACTS COMMON TO ALL CLAIMS

38.     Defendant directly sells its products and services to consumers in Alabama, California, Hawaii, Indiana, Nevada, Ohio, and Washington.

39.     Consumers can purchase subscriptions to Consumer Reports' publications through the Internet, telephone, or mail.  Regardless of how the consumer subscribes, Consumer Reports never requires the individual to read or agree to any terms of service, privacy policy, or agreement authorizing Defendant to use his or her name or any aspect of his or her identity on or in connection with its Data Brokerage Products or for any other commercial purposes.

40.     Consumer Reports maintains a vast digital database comprised of its customers' names, basic demographic information (e.g., home address), and magazine subscription histories and preferences.

41.     Consumer Reports discloses its magazine subscribers' names and other identifying information, including but not limited to those subscribers' home addresses, to data aggregators and appenders, which then provide Consumer Reports with supplemental information, such as—among many other possible data points—sex, age, race, and political party, about each Consumer Reports subscriber that they have separately collected.

42.     Consumer Reports then packages this information into its Data Brokerage Products that are sold, licensed, rented, exchanged, and otherwise disclosed to its various Data Brokerage Clients. On a per record basis, the information includes basic identifying information about each of Consumer Reports' subscribers (name, address, magazines subscribed to, among other such details) along with additional information received from the data aggregators and

appenders discussed above.

43.    These Data Brokerage Products are offered for sale in, and, on information and belief, ultimately sold and entered into commerce throughout, Alabama, California, Hawaii, Indiana, Nevada, Ohio, and Washington, as well as elsewhere throughout the United States.

44.    Consumer Reports also discloses its Data Brokerage Products to data cooperatives, which in turn give Consumer Reports access to their own subscription list databases.

45.    Selling Data Brokerage Products comprised of its customers' names and subscriber information, as detailed above, constitutes a commercial use of its customers' identities on or in connection with goods, merchandise, or products under each of the aforementioned statutes.

46.    As the subjects of commercial transactions, the aspects of Plaintiffs' identities that Defendant uses on or in connection with its products, services, or other commercial activities have significant commercial value.

47.    Because Consumer Reports does not seek its customers' consent, written or otherwise, prior to using their names and identities on or in connection with its Data Brokerage Products, its customers remain unaware that their identities are being trafficked on the open market in this way.

48.    By using Plaintiffs' and the Class members' names and identities on and in connection with its Data Brokerage Products, without their prior consent, Defendant has directly violated (and continues to directly violate) the Alabama Statute, the California Statute, the Hawaii statute, the Indiana Statute, the Nevada Statute, the Ohio Statute, and the Washington Statute.

49.    Defendant has knowingly, intentionally, and willfully violated these statutes. Plaintiffs are informed and believe that, during the time period relevant to this action, Defendant, either directly or through one or more intermediaries acting on its behalf and at its direction, directed and oversaw the compilation and assembly of the Data Brokerage Products from its

customer database, the use of the names and identities of Plaintiffs and the members of the Classes on or in connection with such Data Brokerage Products, and the advertising and sales of such Data Brokerage Products to various third parties, including to its Data Brokerage Clients. Defendant has reaped, and continues to reap, significant profits from its nonconsensual sales of Data Brokerage Products containing the names and likenesses, personas, or identities, along with other personally identifying attributes of Plaintiffs and the members of the Classes.

## CLASS ACTION ALLEGATIONS

50.    Plaintiff Royce Lader seeks to represent a class defined as all Alabama residents who appear in any of Consumer Reports' Data Brokerage Products (the "Alabama Class").

51.    Plaintiff Rita Fahrner seeks to represent a class defined as all California residents who appear in any of Consumer Reports' Data Brokerage Products (the "California Class").

52.    Plaintiffs LeeAnn Biddix and Frank Highsmith seek to represent a class defined as all Hawaii residents who appear in any of Consumer Reports' Data Brokerage Products (the "Hawaii Class").

53.    Plaintiff Jerry Hill seeks to represent a class defined as all Indiana residents who appear in any of Consumer Reports' Data Brokerage Products (the "Indiana Class").

54.    Plaintiff Helen Kassamanian seeks to represent a class defined as all Nevada residents who appear in any of Consumer Reports' Data Brokerage Products (the "Nevada Class").

55.    Plaintiff James Wallen seeks to represent a class defined as all Ohio residents who appear in any of Consumer Reports' Data Brokerage Products (the "Ohio Class").

56.    Plaintiff Ernest Branigh seeks to represent a class defined as all Washington residents who appear in any of Consumer Reports' Data Brokerage Products (the "Washington Class").

57.    Collectively, the classes are referred to as the "Classes."

58.    Members of the Classes are so numerous that their individual joinder herein is impracticable.  On information and belief, members of each of the Classes number in the

hundreds of thousands. The precise number of class members and their identities are unknown to Plaintiffs at this time but may be determined through discovery. Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

59.     Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members. Common legal and factual questions include, but are not limited to:

a.  Whether Consumer Reports uses class members' names, likenesses, personalities, personas, and other indica of identity on or in its Data Brokerage Products;

b.  Whether the conduct described herein constitutes a violation of Ala. Code § 6-5-770, *et seq.*;

c.  Whether the conduct described herein constitutes a violation of Cal. Civ. Code § 3344;

d.  Whether the conduct described herein constitutes a violation of Haw. Rev. Stat. Ann. § 482P-1, *et seq.*;

e.  Whether the conduct described herein constitutes a violation of IC 32-36-1-1, *et seq.*;

f.  Whether the conduct described herein constitutes a violation of Nev. Rev. Stat. Ann. § 597.770, *et seq.*;

g.  Whether the conduct described herein constitutes a violation of Ohio Rev. Code § 2741.01, *et seq.*;

h.  Whether the conduct described herein constitutes a violation of RCW 63.60.010, *et seq.*; and

i.  Whether Plaintiffs and the Classes are entitled to injunctive relief.

60.     The claims of the named Plaintiffs are typical of the claims of the Classes.

61.     Plaintiffs are adequate representatives of the Classes because their interests do not

conflict with the interests of the class members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of class members will be fairly and adequately protected by Plaintiffs and their counsel.

62.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Classes.  Each individual class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

63.     Defendant has acted or refused to act on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Classes as a whole.

<u>**CLAIMS FOR RELIEF**</u>

**FIRST CLAIM FOR RELIEF**
**Violation of Ala. Code § 6-5-770, *et seq.***
**(By Plaintiff Royce Lader, Individually and on Behalf of the Alabama Class)**

64.     Plaintiff Royce Lader incorporates by reference and re-alleges herein all paragraphs alleged above.

65.     Plaintiff Lader brings this claim individually and on behalf of the members of the Alabama Class.

66.    Ala. Code. § 6-5-770, *et seq.,* prohibits an entity or individual from using another individual's name or other indica of identity on or in its products, goods, merchandise, or services without the prior consent.

67.    Liability under the Alabama Right to Publicity is found "without regard as to whether the use is for profit or not for profit."

68.    Plaintiff Lader and the Alabama Class members each subscribed to one or more of Defendant's publications while residing in Alabama.

69.    As shown above, Defendant used Plaintiff Lader's and the putative Alabama Class members' names and indica of identity on or in its Data Brokerage Products without the consent of Plaintiff Lader or the Alabama Class members.

70.    Plaintiff Lader is domiciled and suffered injury in Alabama.

71.    Defendant has sold these aspects of Plaintiff Lader's and the Alabama Class's indica of identities intentionally, willfully, and knowingly.

72.    Based upon Defendant's violation of Ala. Code § 6-5-770, *et seq.*, Plaintiff Lader and members of the Alabama Class are entitled to (1) an injunction requiring Defendant to cease using Plaintiff Lader's and members of the Alabama Class's names and any indica of their identities on or in connection with its products, goods, merchandise, and/or services, (2) statutory damages in the amount of $5,000 per violation to Plaintiff Lader and the members of the Alabama Class, (3) an award of punitive damages or exemplary damages, and (4) an award of reasonable attorneys' fees, court costs, and reasonable expenses under Ala. Code § 12-19-272(a).

**SECOND CLAIM FOR RELIEF**
**Violation of Cal. Civ. Code § 3344**
**(By Plaintiff Rita Fahrner, Individually and on Behalf of the California Class)**

73.    Plaintiff Rita Fahrner incorporates by reference and re-alleges herein all paragraphs alleged above.

74.    Plaintiff Fahrner brings this claim individually and on behalf of the members of the California Class.

75.     Cal. Civ. Code § 3344 prohibits an entity or individual from using another individual's "name … or likeness, in any manner, on or in products, merchandise, or goods … without such person's prior consent[.]"

76.     Plaintiff Fahrner and the California Class members are each a natural person and thus a "person" within the meaning of Cal. Civ. Code § 3344(a).

77.     Plaintiff Fahrner and the California Class members each subscribed to one or more of Defendant's publications while residing in California.

78.     At no time before or at the time Plaintiff Fahrner (or the members of the California Class) purchased subscriptions to Defendant's publications did Defendant notify any of them that it would use their name or identities "on or in products, merchandise, or goods"  by selling Data Brokerage Products on or in which Defendant used their name or identities (or other personally identifying attributes, including home address and title of the publication subscribed to, gender, age, ethnicity, income, political party, religion, and charitable donation history).  *See* §3344(a).  Plaintiff Fahrner and the members of the California Class have never consented to Defendant using their names or identities "on or in products, merchandise, or goods." *See id.*

79.     After Plaintiff Fahrner and the members of the California Class purchased subscriptions to Defendant's publications, and during the relevant statutory period, Defendant, either directly or through one or more intermediary acting on its behalf and at its direction, knowingly sold Data Brokerage Products containing their names and identities (among other identifying and highly sensitive personal information which, *inter alia*, identified each of them as an individual to whom Defendant had sold a subscription to a particular publication) to various third party Data Brokerage Clients, including data aggregators, data appenders, data cooperatives, and others, without first obtaining consent from (or even giving prior notice of these practices to) Plaintiff Fahrner or any member of the California Class.

80.     The Data Brokerage Products that Defendant knowingly sold and continues to sell on the open market, to anyone interested in purchasing them, constitute "products, merchandise, or goods" within the meaning of Cal. Civ. Code § 3344(a).

81.    Defendant knowingly "use[d]" and continues to "use" the names and identities of Plaintiff Fahrner and the other California Class members "on or in" such Data Brokerage Products.  *See id*.

82.    Defendant's unauthorized use of the names and identities of Plaintiff Fahrner and the other California Class members on its Data Brokerage Products, as alleged herein, did not constitute "use[s] of . . . name[s] . . . or likeness[es] in connection with any news, public affairs, or sports broadcast or account, or any political campaign[.]"  Cal. Civ. Code §3344(d).

83.    By and through these actions, Defendant, either directly or through one or more intermediary acting on its behalf and at its direction, knowingly "use[d] another's name . . . or likeness . . . on or in products, merchandise, or goods," without such person[s'] prior consent," in direct violation of § 3344(a).

84.    Plaintiff Fahrner and the other California Class members have been injured, in California, from the violations of their rights of publicity that they suffered as a result of Defendant's nonconsensual use of their names and identities in the manner described herein.

85.    Based upon Defendant's violation of Cal. Civ. Code § 3344, Plaintiff Fahrner seeks: (1) $750.00 in statutory liquidated damages or actual damages, whichever is greater, as well as any profits from Defendant's unauthorized uses of their and the California Class members' names and identities that are attributable to such uses and are not taken into account in computing any actual damages, for themselves and each California Class member pursuant to §3344(a); (2) an award of punitive damages pursuant to §3344(a); (3) a declaration that Defendant's conduct described herein violates §3344(a); (4) an injunction prohibiting Defendant from further using the names or identities of Plaintiff Fahrner or any of the California Class members on or in the Data Brokerage Products that it sells, and requiring Defendant to obtain prior consent from its California customers prior to doing so in the future; and (5) costs and reasonable attorneys' fees pursuant to §3344(a).

### THIRD CLAIM FOR RELIEF
### Haw. Rev. Stat. Ann. § 482P-1, *et seq.*
### (By Plaintiffs LeeAnn Biddix and Frank Highsmith, Individually and on Behalf of the Hawaii Class)

86.     Plaintiffs LeeAnn Biddix and Frank Highsmith incorporate by reference and re-allege herein all paragraphs alleged above.

87.     Plaintiff Biddix and Plaintiff Highsmith bring this claim individually and on behalf of the members of the Hawaii Class.

88.     Haw. Rev. Stat. Ann. § 482P-1, *et seq.,* prohibits an entity or individual from using another individual's "name … or likeness, on or in goods, merchandise, or services without prior consent."

89.     Liability under the Hawaii Statute is found "without regard as to whether the use is for profit or not for profit."

90.     Plaintiff Biddix, Plaintiff Highsmith, and the Hawaii Class members each subscribed to one or more of Defendant's publications while residing in Hawaii.

91.     As shown above, Defendant used Plaintiffs Biddix and Highsmith's and the putative Hawaii Class members' names and identities on or in its Data Brokerage Products without the consent of Plaintiffs Biddix and Highsmith or the Hawaii Class members.

92.     Plaintiffs Biddix and Highsmith are domiciled and suffered injury in Hawaii.

93.     Based upon Defendant's violation of Haw. Rev. Stat. Ann. § 482P-1, *et seq.*, Plaintiffs Biddix and Highsmith and members of the Class are entitled to (1) an injunction requiring Defendant to cease using Plaintiffs Biddix and Highsmith's and members of the Hawaii Class's names and any indica of their identities on or in connection with its goods, merchandise, or services, (2) statutory damages in the amount of $10,000 per violation to Plaintiffs Biddix and Highsmith and the members of the Hawaii Class, and (3) an award of reasonable attorneys' fees, court costs, and reasonable expenses under Haw. Rev. Stat. Ann. § 482P-6.

## FOURTH CLAIM FOR RELIEF
### Violation of IC 32-36-1-1, *et seq.*
### (By Plaintiff Jerry Hill, Individually and on Behalf of the Indiana Class)

94.    Plaintiff Jerry Hill incorporates by reference and re-alleges herein all paragraphs alleged above.

95.    Plaintiff Hill brings this claim individually and on behalf of the members of the Indiana Class.

96.    IC 32-36-1-1, *et seq.* prohibits an entity or individual from using another individual's "name" or "likeness" "[o]n or connection with a product, merchandise, goods, services or commercial activities."

97.    Plaintiff Hill and the Indiana Class members each subscribed to one or more of Defendant's publications while residing in Indiana.

98.    As shown above, Defendant used Plaintiff Hill's and the putative Indiana Class members' names and identities on or in its Data Brokerage Products without the consent of Plaintiff Hill or the Indiana Class members.

99.    Defendant has sold these aspects of Plaintiff Hill's and the Indiana Class's identities intentionally, willfully, and knowingly.

100.    As the subject of a commercial transaction, the aspects of Plaintiff Hill's and the Indiana Class's identities that Defendant uses on or in connection with its products, services, or other commercial activities have commercial value.

101.    Based upon Defendant's violation of IC 32-36-1-1, *et seq.*, Plaintiff Hill and members of the Indiana Class are entitled to (1) an injunction requiring Defendant to cease using Plaintiff Hill's and members of the Indiana Class's names and any aspects of their identities on or in connection with its products, goods, merchandise, services, and/or commercial activities (2) statutory damages in the amount of $1,000 per violation to Plaintiff Hill and the members of the Indiana Class, (3) an award of treble or punitive damages, and (4) an award of reasonable attorneys' fees, costs, and reasonable expenses under IC 32-36-1-10 and IC 32-36-1-12.

**FIFTH CLAIM FOR RELIEF**
**Violation of Nev. Rev. Stat. Ann. § 597.770, *et seq.***
**(By Plaintiff Helen Kassamanian, Individually and on Behalf of the Nevada Class)**

102.    Plaintiff Kassamanian incorporates by reference and re-alleges herein all paragraphs alleged above.

103.    Plaintiff Kassamanian brings this claim individually and on behalf of the members of the Nevada Class.

104.    Nev. Rev. Stat. Ann. § 597.790 states that "[a]ny commercial use by another of the name … of a person requires the written consent of that person or his or her successor in interest[.]"  "Commercial use" includes "the use of the name, voice, signature, photograph or likeness of a person on or in any product, merchandise or goods or for the purposes of advertising, selling or soliciting the purchase of any product, merchandise, goods or service." Nev. Rev. Stat. Ann. § 597.770.

105.    Plaintiff Kassamanian and the Nevada Class members each subscribed to one or more of Defendant's publications while residing in Nevada.

106.    As shown above, Defendant used Plaintiff Kassamanian's and the putative Nevada Class members' names and identities on or in its Data Brokerage Products, and thus for a commercial use, without the consent of Plaintiff Kassamanian or the Nevada Class members.

107.    Plaintiff Kassamanian is domiciled and suffered injury in Nevada.

108.    Defendant has sold these aspects of Plaintiff Kassamanian's and the Nevada Class's identities intentionally, willfully, and knowingly.

109.    Based upon Defendant's violation of Nev. Rev. Stat. Ann. § 597.770, *et seq.*, Plaintiff Kassamanian and members of the Nevada Class are entitled to (1) an injunction requiring Defendant to cease using Plaintiff Kassamanian's and members of the Class's names and any indica of their identities on or in connection with its products, goods, merchandise, and/or services, (2) statutory damages in the amount of not less than $750 per violation to Plaintiff Kassamanian and the members of the Nevada Class, and (3) an award of punitive damages or exemplary damages, under Nev. Rev. Stat. Ann. § 597.810.

**SIXTH CLAIM FOR RELIEF**
**Violation of Ohio Rev. Code § 2741.01, *et seq.***
**(By Plaintiff James Wallen, Individually and on Behalf of the Ohio Class)**

110.    Plaintiff James Wallen incorporates by reference and re-alleges herein all paragraphs alleged above.

111.    Plaintiff Wallen brings this claim individually and on behalf of the members of the Ohio Class.

112.    Ohio Rev. Code § 2741.01, *et seq.,* prohibits an entity or individual from using another individual's "name" or "likeness" "[o]n or in connection with a place, product, merchandise, goods, services, or other commercial activities" without prior consent.

113.    Plaintiff Wallen and the Ohio Class members each subscribed to one or more of Defendant's publications while residing in Ohio.

114.    Plaintiff Wallen and the Ohio Class members are each a natural living person and therefore an "individual" within the meaning of Ohio Rev. Code. § 2741.02.

115.    Prior to and at the time Plaintiff Wallen and the Ohio Class members subscribed to Defendant's publications, Defendant did not notify any of them that it would use their names or other identifying attributes "on or in connection with" the Data Brokerage Products that it sells, and none of them has given Defendant authorization to do so.

116.     After Plaintiff Wallen and the Ohio Class members subscribed to Defendant's publications, and during the relevant statutory period, Defendant, either directly or through one or more intermediaries acting on its behalf and at its direction, knowingly advertised and sold Data Brokerage Products containing the names, identities, and other personally identifying attributes to various third-party Data Brokerage Clients, including data aggregators, data appenders, data cooperatives, and various other persons interested in buying them, without first obtaining written consent to these practices from (or even giving prior notice to) Plaintiff Wallen or any of the Ohio Class members.

117.    The name "Jim Wallen" is one of the identifying attributes Defendant used on or in connection with the Data Brokerage Products that it sold and continues to sell, are "the actual,

assumed, or clearly identifiable name[s] or reference[s] [] that identif[y]" Plaintiff Wallen as a person.  Accordingly, Defendant used the  "name[s]" or "likeness[es]," and thus the "persona[s]," of Plaintiff Wallen within the meaning of Ohio Rev. Code § 2741.01(A), (C).

118.    As alleged above throughout, Defendant knowingly used the names or identities (and thus the personas) of Plaintiff Wallen and the Ohio Class members on or in connection with its products, merchandise, goods, or services, and thus for "commercial purposes" within the meaning of Ohio Rev. Code § 2741.01(b)(1).

119.    Defendant did not request, much less obtain, any prior "written, electronic, digital, or any other verifiable means of authorization" from Plaintiff Wallen or any of the Ohio Class members prior to using their names or identities (*i.e.*, personas) for commercial purposes within the meaning of Ohio Rev. Code § 2741.01(F).

120.    Accordingly, by using the "name[s]," i.e., "aspect[s] of [the] persona[s]," of Plaintiff Wallen and the Ohio Class members "for a commercial purpose . . . during their lifetime[s]," and while they resided in Ohio, without "written consent," Defendant directly violated Ohio Rev. Code § 2741.01(A), (C), 2741.02(A)-(B).

121.     Plaintiff Wallen and the Ohio Class members have been injured, while residing in Ohio, from the violations of their rights of publicity caused by Defendant's nonconsensual use of their names and identities (and thus their personas) in this way.

122.    Based upon Defendant's violation of Ohio Rev. Code § 2741.01, *et seq.*, Plaintiff Wallen seeks: (1) statutory liquidated damages of between $2,500.00 and $10,000.00 per violation to themselves and each Ohio Class member pursuant to Ohio Rev. Code. §§ 2741.07(A)(1)(a)-(b) & 2741.07(A)(2); (2) an award of punitive or exemplary damages pursuant to Ohio Rev. Code. § 2741.07(A)(1)(c); (3) an injunction requiring Defendant to obtain prior written consent from Ohio customers prior to using their names or identities on or in the Data Brokerage Products that it advertises and sells pursuant to Ohio Rev. Code. § 2741.07(D)(3); and (4) costs and reasonable attorneys' fees pursuant to Ohio Rev. Code. § 2741.07(D).

**SEVENTH CLAIM FOR RELIEF**
**Violation of RCW 63.60.010, *et seq.***
**(By Plaintiff Ernest Branigh, Individually and on Behalf of the Washington Class)**

123.    Plaintiff Ernest Branigh incorporates by reference and re-alleges herein all paragraphs alleged above.

124.    Plaintiff Branigh brings this claim individually and on behalf of the members of the Washington Class.

125.    RCW 63.60.010, *et seq.,* prohibits an entity or individual from using another individual's "name … on or in goods, merchandise, or products entered into commerce in this state … without written or oral, express or implied consent of the owner of the right[.]"

126.    Under the Washington Statute, "[a]n infringement may occur under this section without regard to whether the use or activity is for profit or not for profit."  RCW 63.60.050.

127.    Plaintiff Branigh and the Washington Class members each subscribed to one or more of Defendant's publications while residing in Washington.

128.    As shown above, Defendant used Plaintiff Branigh's and the putative Washington Class members' names and identities on or in its Data Brokerage Products without the consent of Plaintiff Branigh or the Washington Class members.

129.    Plaintiff Branigh is domiciled and suffered injury in Washington.

130.    Defendant has sold these aspects of Plaintiff Branigh and the Washington Class's identities intentionally, willfully, and knowingly.

131.    As the subject of a commercial transaction, the aspects of Plaintiffs Branigh's and the Washington Class's identities that Defendant uses on or in its goods, merchandise, or products have commercial value.

132.    Based upon Defendant's violation of RCW 63.60.010, *et seq.*, Plaintiff Branigh and members of the Washington Class are entitled to (1) an injunction requiring Defendant to cease using Plaintiff Branigh's and members of the Washington Class's names and any indica of their identities on or in connection with its goods, merchandise, or products, (2) statutory damages in the amount of $1,500 per violation to Plaintiff Branigh and the members of the

Washington Class, and (3) an award of reasonable attorneys' fees, court costs, and reasonable expenses under RCW 63.60.060.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.    For an order certifying the Classes under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiffs as the representatives of the Classes and Plaintiffs' attorneys as Class Counsel to represent members of the Classes;

b.    For an order declaring the Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

d.    For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For all injunctive relief the court finds appropriate; and

h.    For an order awarding Plaintiffs and the Classes their reasonable attorneys' fees and expenses and costs of suit.

**DEMAND FOR TRIAL BY JURY**

Plaintiffs demand a trial by jury of all issues so triable.

Dated:  February 7, 2022                        Respectfully submitted,

                                                         **BURSOR & FISHER, P.A.**

                                                         By: */s/ Philip L. Fraietta*
                                                              Philip L. Fraietta

                                                         Philip L. Fraietta
                                                         888 Seventh Avenue

New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
pfraietta@bursor.com
jdiamond@bursor.com

J. Eli Wade-Scott*
Michael W. Ovca*
**EDELSON PC**
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: (312) 589.6370
Fax: (312) 589.6378
ewadescott@edelson.com
movca@edelson.com

*Counsel for Plaintiffs and the Proposed Classes*

**Pro Hac Vice** forthcoming