UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
JAMES WALLEN, ROYCE LADER, RITA
FAHRNER, LEEANN BIDDIX, FRANK
HIGHSMITH, JERRY HILL, HELEN
KASSAMANIAN, and ERNEST BRANIGH,
individually and on behalf of all others similarly
situated,
                Plaintiffs,

v.

CONSUMER REPORTS, INC.,
                Defendant.
--------------------------------------------------------------x

**OPINION AND ORDER**

21 CV 8624 (VB)

Briccetti, J.:

       Plaintiffs James Wallen, Royce Lader, Rita Fahrner, LeeAnn Biddix, Frank Highsmith, Jerry Hill, Helen Kassamanian, and Ernest Branigh bring this putative class action against defendant Consumer Reports, Inc., arising out of defendant's practice of renting or exchanging data about its subscribers to third parties for profit, including subscribers' names, titles of publications subscribed to, and home addresses. Plaintiffs claim this practice misappropriates subscribers' names, identities, or likenesses in violation of the right of publicity statutes of Alabama, California, Hawaii, Indiana, Nevada, Ohio, and Washington (together, the "Misappropriation Statutes").

       Now pending is defendant's motion to dismiss the first amended complaint ("Amended Complaint" or "Am. Compl.") under Rule 12(b)(6). (Doc. #28).

       For the reasons set forth below, the motion is GRANTED.

       The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

## BACKGROUND

       For the purpose of ruling on the motion to dismiss, the Court accepts as true all well-

1

pleaded allegations in the Amended Complaint and draws all reasonable inferences in plaintiffs' favor, as summarized below.

Plaintiffs are residents of Alabama, California, Hawaii, Indiana, Nevada, Ohio, and Washington and subscribers to defendant's Consumer Reports magazines. They allege defendant provides information about subscribers, including their names, titles of publications subscribed to, and home addresses, to other companies that aggregate this information with data about the subscribers from other sources, such as sex, age, race, and political party. The aggregated data is then returned to defendant (the "Subscriber Lists"), which defendant sells, licenses, exchanges, or rents to third parties for a "significant" profit. (Am. Compl. ¶¶ 42, 49).

Defendant allegedly does not seek its subscribers' consent before providing their names and identities on the Subscriber Lists; thus, "customers remain unaware their identities are being" disclosed. (Am. Compl. ¶ 47).

## DISCUSSION

I.  Rule 12(b)(6) Standard of Review

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the complaint under the "two-pronged approach" articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).[1] First, a plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and thus are not sufficient to withstand a motion to dismiss. Id. at 678; Hayden v. Paterson, 594 F.3d 150, 161 (2d Cir. 2010). Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

2

plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the complaint's allegations must meet a standard of "plausibility." Ashcroft v. Iqbal, 556 U.S. at 678; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 564 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. at 556).

"[A] district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 75 (2d Cir. 1998). Courts may also take judicial notice of legislative history materials when ruling on motions to dismiss. See, e.g., Quick Cash of Westchester Ave. LLC v. Vill. of Port Chester, 2013 WL 135216, at *5 (S.D.N.Y. Jan. 10, 2013) (bill jackets); Wang v. Pataki, 356 F. Supp. 2d 445, 453 (S.D.N.Y. 2005) (same).

II. Misappropriation Statutory Claims

Defendant argues the alleged disclosure of the Subscriber Lists is not a prohibited commercial use under the Misappropriation Statutes.

The Court agrees.

A. Statutes

Each of the Misappropriation Statutes prohibits certain commercial uses of names or likenesses on or in a product, without consent.

The Alabama statute states:

[A]ny person or entity who uses or causes the use of the indicia of identity of a person, on or in products, goods, merchandise, or services entered into commerce in this state, or for

3

purposes of advertising or selling, or soliciting purchases of, products, goods, merchandise, or services . . . without consent shall be liable under this article to that person, or to a holder of that person's rights.

Ala. Code § 6-5-772.

The California statute states:

Any person who knowingly uses another's name, . . . or likeness, in any manner, on or in products, merchandise, or goods, or for purposes of advertising or selling, or soliciting purchases of, products, merchandise, goods or services, without such person's prior consent, . . . shall be liable.

Cal. Civ. Code § 3344.

The Hawaii statute states:

[A]ny person who uses or authorizes the use of a[n]. . . individual's or personality's name, . . . or likeness, on or in goods, merchandise, or services entered into commerce in this State, or for purposes of advertising products, merchandise, goods, or services, . . . without express or implied consent of the owner of the right, has infringed a publicity right under this chapter.

Haw. Rev. Stat. Ann. § 482P-5.

The Indiana statute states: "A person may not use an aspect of a personality's right of publicity for a commercial purpose during the personality's lifetime . . . without having obtained previous written consent." Ind. Code § 32-36-1-8(a). Commercial purpose includes "the use of an aspect of a personality's right of publicity as follows: (1) On or in connection with a product, merchandise, goods, services, or commercial activities. (2) For advertising or soliciting purchases of products, merchandise, goods, services, or for promoting commercial activities." Id. § 32-36-1-2.

The Nevada statute states:

1. There is a right of publicity in the name . . . or likeness of every person. The right endures for a term consisting of the life of the person . . . regardless of whether the person commercially exploits the right during his or her lifetime.

4

> 2. Any commercial use by another of the name . . . or likeness of a person requires the written consent of that person.

Nev. Rev. Stat. Ann. § 597.790.  Commercial use under the statute encompasses "the use of the name . . . or likeness of a person on or in any product, merchandise or goods or for purposes of advertising, selling or soliciting the purchase of any product, merchandise, goods or service."  Id. § 597.770.

The Ohio statute states:  "[A] person shall not use any aspect of an individual's persona for a commercial purpose . . . [d]uring the individual's lifetime."  Ohio Rev. Code Ann. § 2741.02.  A "persona" is defined as "an individual's name . . .[or] likeness" if they "have commercial value."  Id. § 2741.01.  Commercial purpose is "the use of or reference to an individual's persona . . . [o]n or in connection with a place, product, merchandise, goods, services."  Id.

The Washington statute states:  "Every individual . . . has a property right in the use of his or her name . . . or likeness."  Wash. Rev. Code § 63.60.010.  Further, "[a]ny person who uses or authorizes the use of a[n] . . . individual's . . . name . . . or likeness, on or in goods, merchandise, or products entered into commerce in this state" without consent "has infringed such right."  Id. § 63.60.050.

For the reasons set forth below, plaintiff has not stated a claim for relief under any of the Misappropriation Statutes.

    B.    <u>Infringing Commercial Use</u>

Defendant advances four reasons why its alleged disclosures are not a proscribed commercial use under the Misappropriation Statutes:  (i) the subscribers' names are not used to sell, endorse, or draw attention to anything; (ii) the subscribers' names were not used "on or in" a product that is separate or distinct from the names themselves; (iii) selling the Subscriber Lists

5

does not infringe on plaintiffs' property rights in their identities; and (iv) the names were never used publicly.

Although the Court finds defendant's first three arguments unpersuasive, the Court agrees plaintiffs have not plausibly alleged their names were publicly used, as required by each Misappropriation Statute at issue; thus, plaintiffs' claims must be dismissed.

1. Names Used to Sell a Product

Each of the Misappropriation Statutes requires the use of an individual's name "on or in" a product, good, or service. Here, plaintiffs allege defendant included their names, demographic information, and contact information in Subscriber Lists that were then sold or rented to third-party marketers.

Accordingly, plaintiffs' allegations fit within the plain meaning of the Misappropriation Statutes in that their names appear on or in a product sold by defendant.

2. Separate or Distinct Product

The plain language of the Misappropriation Statutes proscribes the commercial use of a person's name "on or in" a product, good, or service. They do not, as defendant argues, require that the name be on or in a separate product, good, or service. Two of the cases upon which defendant relies concern the Illinois misappropriation statute, which is not at issue here, that does not prohibit the use of someone's identity "on or in" a product, and therefore, it is inapposite to the Misappropriation Statutes. See Huston v. Hearst Commc'ns, Inc., 2022 WL 17097450, at *1 (7th Cir. Nov. 22, 2022); Dobrowolski v. Intelius, Inc., 2018 WL 11185289, at *1 (N.D. Ill. May 21, 2018). The third case on which defendant relies, Brooks v. Thomas Reuters Corp., is unpersuasive because it does not discuss the California Misappropriation Statute's "on or in" language and contradicts binding California Supreme Court precedent regarding that provision.

2021 WL 3621837, at *4 (N.D. Cal. Aug. 16, 2021); see Kellman v. Spokeo, Inc., 2022 WL 1157500, at *9 (N.D. Cal. Apr. 19, 2022) (disagreeing with the finding in Brooks v. Thomson Reuters Corp. that there is no misappropriation when the product is the name, likeness or personal information), cert. for interlocutory appeal denied, 2022 WL 2965399 (N.D. Cal. July 8, 2022).

In Comedy III Productions, Inc. v. Gary Saderup, Inc., the California Supreme Court analyzed the California Misappropriation Statute and issued the following binding holding:

> We therefore give effect to the plain meaning of the statute: it makes liable any person who, without consent, uses a deceased personality's name, voice, photograph, etc., either (1) "on or in" a product, or (2) in "advertising or selling" a product. The two uses are not synonymous: in the apt example given by the Court of Appeal, there is an obvious difference between "placing a celebrity's name on a 'special edition' of a vehicle, and using that name in a commercial to endorse or tout the same or another vehicle."

21 P.3d 797, 802 (Cal. 2001) (emphasis added). Thus, including plaintiffs' names on the Subscriber Lists is enough under the Misappropriation Statutes. There is no requirement that the names be used "to draw attention to a separate product." (Doc. #29 ("Def. Mem.") at 14).

        3.      <u>Property Rights</u>

The Misappropriation Statutes all safeguard a property right in an individual's unique identity.[2] This is consistent with the misappropriation tort, which "is in the nature of a property right." Restatement (Second) of Torts § 652C cmt. a (Am. L. Inst. 1977).

---

[2] Ala. Code § 6-5-771 (right of publicity "is freely transferable and descendible . . . and shall be considered property" of a decedent's estate); Cal. Civ. Code § 3344.1(b) (right of publicity for a decedent is a "property right[], freely transferable or descendible"); Haw. Rev. Stat. Ann. § 482P-2 ("Every individual or personality has a property right in the use of the individual's or personality's name" which "shall be freely transferable, assignable, and licensable"); Ind. Code. § 32-36-1-16 (right of publicity is a "property right[], freely transferable and descendible"); Ohio Rev. Code. Ann. §§ 2741.01(D), 2741.04 (right of publicity is a "property right" and "freely transferable and descendible"); Wash. Rev. Code § 63.60.010 ("Every individual or personality has a property right in the use of his or her name" which "shall be freely transferable, assignable, and licensable."). Nevada does not explicitly call the right of

Here, plaintiffs allege their names and other personal information were included on the Subscriber Lists. Although plaintiffs have not alleged the public or third parties knew plaintiffs' unique identities appeared on the Subscriber Lists before purchasing them, plaintiffs' unique identities were disclosed.

Consequently, the Court disagrees with defendant that plaintiffs need to allege demonstrable value in their names to establish a violation of a property right protected by the Misappropriation Statutes, and concludes plaintiffs plausibly allege the infringement of property rights in their identities, which are protected by the Misappropriation Statutes.

    4.    The "Public" Component of Publicity

Each of the Misappropriation Statutes requires a public commercial use of a person's name or identity for liability.

Specifically, five of the seven Misappropriation Statutes—those of Alabama, Hawaii, Indiana, Nevada, and Ohio—define or reference the "right of publicity" or "publicity." See Ala. Code §§ 6-5-771; Haw. Rev. Stat. Ann. § 482P-5; Ind. Code § 32-36-1-8; Nev. Rev. Stat. Ann. § 597.790; Ohio Rev. Code Ann. § 2741.02. Moreover, relevant legislative history of the California and Hawaii Misappropriation Statutes supports that publicity is a critical component of each statute. (See, e.g., Doc. #36-2, Assemb. Republican Caucus Analysis, at 1 (Cal. 1984) ("The California legislature enacted Civil Code § 3344 in 1971, codifying the right of publicity and according statutory recognition to the previous common law evolution of that right." (emphasis added)); Doc. #36-1, S. 714, 31st Leg., Reg. Sess. (Haw. 2021) (mentioning "publicity" nine times)). Regarding the Washington statute, that state's Supreme Court has

---

publicity a property right. However, it states it is "freely transferable," assignable, and descendible—implying it is a property right. See Nev. Rev. Stat. § 597.800.

recognized a common law right to privacy, see Reid v. Pierce County, 961 P.2d 333, 338–39 (Wash. 1998), including "[mis]appropriation," Mark v. Seattle Times, 635 P.2d 1081, 1094 (Wash. 1981).  And, as discussed below, publicity is a crucial component of the misappropriation tort.

Nevertheless, plaintiffs assert there is no requirement that use of their identities be public to be actionable because none of the Misappropriation Statutes explicitly mentions "public use." Rather, plaintiffs argue commercial use alone is sufficient.

The Court disagrees.  By referencing "right of publicity" or "publicity" in enacting the Misappropriation Statutes, the legislatures established a cause of action for the wrongful public commercial use of a person's name or identity.  The common understanding of "publicity" is "the quality or state of being public."  Publicity, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/publicity (last visited Dec. 8, 2022).  And "public" means "exposed to general view."  Public, Merriam-Webster's Dictionary, https://www.merriam-webster.com/dictionary/public (last visited Dec. 8, 2022).  Therefore, a right of publicity is the right to protect against commercial use of a person's identity through disclosure to the general public, without the person's consent.

This conclusion is reinforced by the common law misappropriation tort, under which "[o]ne who appropriates to his own use or benefit the name or likeness of another is subject to liability to the other for invasion of his privacy." Restatement (Second) of Torts § 652C.  Public use is essential:

> The value of the plaintiff's name is not appropriated by mere mention of it, or by reference to it in connection with legitimate mention of his public activities; . . . No one has the right to object merely because his name or his appearance is brought before the public, since neither is in any way a private matter and both are open to public observation.  It is only when the publicity is given for the purpose of appropriating to the

>  defendant's benefit the commercial or other values associated with the name or likeness that the right of privacy is invaded.

Id. cmt. d (emphasis added).

The publicity required by the misappropriation tort must be imputed to the Misappropriation Statutes. Even when "publicity is not explicitly stated as an element per se, it is still a fundamental requirement of the cause of action of wrongful appropriation of personality." J.R. v. Walgreens Boots Alliance, Inc., 470 F. Supp. 3d 534, 551 (D.S.C. 2020) (dismissing a claim under South Carolina's misappropriation statute where plaintiffs' names were included in a database available to affiliated companies, but not the general public), aff'd, 2021 WL 4859603 (4th Cir. Oct. 19, 2021) (per curiam) (unpublished opinion). "[I]nfringement on the right of publicity and wrongful appropriation of personality are one in the same, meaning publicity is required in a wrongful appropriation of personality claim." Id. Further, under state law in each of the relevant states, an abrogation of common law must be clear, unequivocal, or explicit in a statute, which none of the Misappropriation Statutes at issue do.[3] Indeed, legislative

---

[3]   See Ivey v. Wiggins, 159 So. 2d 618, 620 (Ala. 1964) ("Legislative enactments in modification of the common law should be clear and such as to prevent reasonable doubt as to the legislative intent and of the limits of such change."); Presbyterian Camp & Conf. Ctrs., Inc. v. Sup. Ct., 501 P.3d 211, 217 (Cal. 2021) (Generally, "unless expressly provided, statutes should not be interpreted to alter the common law, and should be construed to avoid conflict with common law rules. A statute will be construed in light of common law decisions, unless its language clearly and unequivocally discloses an intention to depart from, alter, or abrogate the common-law rule concerning the particular subject matter."); Watson v. Brown, 686 P.2d 12, 15 (Haw. 1984) ("A statutory remedy is, as a rule, merely cumulative and does not abolish existing common law remedy unless so declared in express terms or by necessary implication."); Drake by Drake v. Mitchell Cmty. Schs., 649 N.E.2d 1027, 1030 (Ind. 1995) ("Absent express declaration or unmistakable implication, statutes will not be interpreted as changing the common law."); Bresnik v. Beluah Park Ltd., 617 N.E.2d 1096, 1098 (Ohio 1993) ("Statutes are to be read and construed in the light of and with reference to the rules and principles of the common law in force at the time of their enactment, and in giving construction to a statute the legislature will not be presumed or held[] to have intended a repeal of the settled rules of the common law unless the language employed by it clearly expresses or imports such intention"); First Fin. Bank v. Lane, 339 P.3d 1289, 1293 (Nev. 2014) ("This court will not read a statute to abrogate

materials associated with certain of the Misappropriation Statutes proclaim they do not disrupt the common law misappropriation tort.  (See Doc. #17-1, Bill Analysis, 1999 S.B. 54 (Ohio 1999) (noting that "the act does not abrogate the common law relating to privacy as recognized by the Ohio courts."); Doc. #36-1 (Hawaii legislative history noting the Misappropriation Statute is "codifying the right of publicity and according statutory recognition to the previous common law evolution of that right.")).

Courts have also recognized the similarities between the common law misappropriation tort and misappropriation statutes, including some of the Misappropriation Statutes at issue here. See, e.g., Downing v. Abercrombie & Fitch, 265 F.3d 994, 1001 (9th Cir. 2001) ("Under [California Civil Code] section 3344, a plaintiff must prove all the elements of the common law cause of action."); see generally Farris v. Orvis Co., 2022 WL 10477051 (D. Vt. Oct. 18, 2022) (noting similarities between California, Illinois, and Ohio misappropriation statutes and common-law causes of action).  Other courts have relied on the Restatement in declining to find tortious misappropriation in the absence of public use when individuals' names were included in customer lists.  See, e.g., Shibley v. Time, Inc., 341 N.E.2d 337, 339 (Ohio Ct. App. 1975) (magazine did not commit misappropriation by renting and selling subscriber lists because the tort "refers to those situations where the plaintiff's name or likeness is displayed to the public" and the "activity complained of here does not fall within that classification"); see generally Farris v. Orvis Co., 2022 WL 10477051.

---

the common law without clear legislative instruction to do so."); King Cnty. v. Vinci Constr. Projects/Parsons RCI/Frontier-Kemper, JV, 398 P.3d 1093, 1098 (Wash. 2017) (en banc) ("[W]e will not deviate from the common law unless the language of a statute be clear and explicit for this purpose.").

Critically, plaintiffs do not claim the Subscriber Lists were publicly available. Plaintiffs allege the names on the Subscriber Lists are disclosed to third parties who rent, exchange, or purchase the Subscriber Lists. Plaintiffs' purported reading of the Misappropriation Statutes ignores the "rationale for an anti-publicity statute in the first instance. The right of publicity does not protect someone's name in and of itself." Farris v. Orvis Co., 2022 WL 10477051, at *5. "The rationale for protecting the right of publicity is the straightforward one of preventing unjust enrichment by theft of good will" that plaintiffs could otherwise have employed for their own uses and profits. Zacchini v. Scripps-Howard Broad. Co., 433 U.S. 562, 576 (1977).

Here, a member of the public would not know any of the individuals whose names appear on the Subscriber Lists unless they purchased the Subscriber Lists. (Def. Mem. at 14 ("There was no 'James Wallen List,' for example, nor did any 'Data Brokerage Client' ever know that James Wallen's name would be on a list it rented.")). This is distinct from cases in which a member of the general public pays for access to a subscriber list or similar database because, before purchase, they specifically know which individuals' information is available. See Kellman v. Spokeo, Inc., 2022 WL 1157500, at *6, **8–9 (plaintiffs plausibly alleged misappropriation under California, Indiana, and Ohio Misappropriation Statutes when plaintiff pleaded the public could "use Spokeo's service to find specific names" because "if they type [a plaintiff's] name, his 'teaser' is one result"). Indeed, one cannot visit defendant's website and see the Subscriber Lists. Classifying this limited, private disclosure only to the third parties who purchase the Subscriber Lists as publicity would transform the Misappropriation Statutes into sweeping data privacy laws.

Drawing all reasonable inferences in plaintiffs' favor, the Court finds plaintiffs have not plausibly alleged the Subscriber Lists publicly used their names and information. Accordingly, plaintiffs' claims must be dismissed.

## CONCLUSION

The motion to dismiss is GRANTED.

The Clerk is instructed terminate the motion (Doc. #28) and close this case.

Dated: December 9, 2022
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge